Concurring and Dissenting Opinion by
RECKTENWALD, C.J.
I respectfully dissent from the majority’s determination that Duane Kanuha was not a valid holdover member of the Land Use Commission (LUC).[1] Under section 26-34(b) of the Hawai'i Revised Statutes (HRS), “[a]ny member of a board or commission whose term has expired and who is not disqualified for membership under [HRS § 26-34(a)] may continue in office as a holdover member until a successor is nominated and appointed.” In my view, the only language of disqualification in HRS § 26-34(a) provides that “[n]o person shall be appointed consecutively to more than two terms as a member of the same board or commission; provided that membership on any board or commission shall not exceed eight consecutive years.” Duane Kanuha was therefore a valid holdover member of the LUC because he had not been appointed consecutively to more than two terms nor had his membership on the commission exceeded eight consecutive years. Accordingly, I would affirm the judgment of the Intermediate Court of Appeals (ICA), which reversed the judgment of the circuit court.
“[T]he fundamental starting point for statutory-interpretation is the language of the statute itself.” First Ins. Co. of Hawai'i v. A & B Props., 126 Hawai'i 406, 414, 271 P.3d 1165, 1173 (2012). “[W]here the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.” Id. Here, HRS § 205-1 provides in relevant part, “[t]he [LUC] shall consist of nine members who shall hold no other public office and shall be appointed in the manner and serve for the term set forth in section 26-34.” Section 26-34 provides, in turn, that:
(a) The members of each board and commission established by law shall be nominated and, by and with the advice and consent of the senate, appointed by the governor. Unless otherwise provided by this chapter or by law hereafter enacted, the terms of the members shall be for four years; provided that the governor may reduce the terms of those initially appointed so as to provide, as nearly as can be, for the expiration of an equal number of terms at intervals of one year for each board and commission. Unless otherwise provided by law, each term shall commence on July 1 and expire on June 30, except that the *207 terms of the chairpersons of the board of agriculture, the board of land and natural resources, and the Hawaiian homes commission shall commence on January 1 and expire on December 31. No person shall be appointed consecutively to more than two terms as a member of the same board or commission; provided that membership on any board or commission shall not exceed eight consecutive years.
(b) Any member of a board or commission whose term has expired and who is not disqualified for membership under subsection (a) may continue in office as a holdover member until a successor is nominated and appointed; provided that a holdover member shall not hold office beyond the end of the second regular legislative session following the expiration of the member’s term of office.
(Emphases added).
Thus, the plain language of the statute provides that if a member’s term expires, and the member is not disqualified pursuant to HRS § 26-34(a), then that member may continue to serve as a holdover until a successor is nominated and appointed, provided that the holdover period does not extend beyond the end of the second regular legislative session following the expiration of the member’s term of office. HRS § 26—34(b)-
Although HRS § 26-34(a) does not explicitly use the term “disqualified” to identify those individuals ineligible from serving as holdovers, the relevant language is readily identifiable in HRS § 26-34(a)’s final sentence: “No person shall be appointed consecutively to more than two terms as a member of the same board or commission; provided that membership on any board or commission shall not exceed eight consecutive year’s.” Put another way, a member is disqualified from serving on a board or commission only if that person either has served two terms as a member of the same board or commission, or has served for eight consecutive years on that board or commission. Under the plain language of the statute, only these board and commission members are precluded from serving as holdovers under HRS § 26—34(b).
The majority, however, reads the first sentence of HRS § 26-34(a) to impose an additional disqualification for purposes of HRS § 26-34(b). Specifically, the majority argues that “a member who is nominated but rejected by the Senate is ‘disqualified’ from serving as a holdover member.” Majority Op. at 193, 320 P.3d at 858. Respectfully, the majority’s position conflates the nomination and appointment process set forth in the first sentence of HRS § 26-34(a) with the relevant disqualification language included in the last sentence of that subsection, and arbitrarily distinguishes between members who have been rejected by the senate and those who have not been re-nominated by the governor.
The first sentence of HRS § 26-34(a) provides that “[t]he members of each board and commission established by law shall be nominated and, by and with the advice and consent of the senate, appointed by the governor.” In short, this sentence sets forth the three-step process by which board and commission members are nominated and appointed: (1) nomination by the governor; (2) confirmation by the senate; and (3) appointment by the governor. Nothing in this sentence speaks to who is disqualified from serving as a board or commission member in the first instance. The only language of disqualification in HRS § 26-34(a) is set forth in its last sentence. Again, that sentence provides that “[n]o person shall be appointed consecutively to more than two terms as a member of the same board or commission,” and “membership on any board or commission shall not exceed eight consecutive years.” In other words, only a person who has served two terms as a member on the same board or commission, or who has served eight consecutive years on that board or commission is “disqualified” from being appointed by the governor, and is therefore prohibited from serving as a holdover under HRS § 26-34(b).
Moreover, the majority’s argument that “a member who is nominated but rejected by the Senate is ‘disqualified’ from serving as a holdover member,” arbitrarily distinguishes between members who have been rejected by the senate and those who have not been renominated by the governor. Majority Op. at *208 193, 320 P.3d at 858. As this court has explained, “the subject of appointment of members to boards and commissions must necessarily be considered to be the joint responsibility of the governor and senate[.]” See, e.g., Hanabusa v. Lingle, 119 Hawai'i 341, 351, 198 P.3d 604, 614 (2008) (emphasis added) (quoting Life of the Land v. Burns, 59 Haw. 244, 251, 580 P.2d 405, 410 (1978)). As the majority acknowledges, “an individual can only become eligible to serve as an LUC commissioner by being nominated by the governor and thereafter confirmed by the Senate.” Majority Op. at 192, 320 P.3d at 857. Despite the joint responsibility of the governor and senate in the appointment process, and the requirement that a sitting board member must be re-nominated by the governor and re-confirmed by the senate in order to serve a second term, the majority concludes that a member who has not been re-nominated by the governor is permitted to serve as a holdover, whereas a member who has been rejected by the senate may not. Majority Op. at 193, 320 P.3d at 858. The majority offers no justification—statutory or otherwise—for distinguishing between members who have failed to be re-nominated by the governor and those who have failed to garner re-confirmation by the senate. Carried to its logical end, the majority’s position would render HRS § 26-34(b) largely superfluous because it would limit eligible holdovers to only those board or commission members who have been re-nominated by the governor, but not yet been confirmed by the senate. There is no indication that in adopting HRS § 26-34, the legislature sought to limit holdovers to such a limited class of persons.
Indeed, the legislative history appears to indicate just the opposite. See First Ins. Co. of Hawai'i, 126 Hawai'i at 415, 271 P.3d at 1174 (noting that this court can look to legislative history for guidance in construing the language of a statute when an ambiguity in the statutory language exists). The legislative history of HRS § 26—34(b) indicates that both the house and senate intended “to authorize a holdover member of a board or commission to continue membership until a successor is nominated and appointed.” S. Stand. Comm. Rep. 229-84, 1984 Senate Journal, at 1087; H. Stand Comm. Rep. 604-84, 1984 House Journal, at 1148 (same); H. Stand. Comm. Rep. 690-84, 1984 House Journal, at 1194 (same). The only limitation on the duration of this service is expressly set forth in HRS § 26-34(b), which provides that “a holdover member shall not hold office beyond the end of the second regular legislative session following the expiration of the member’s term of office.” In short, there is no indication in the legislative history of HRS § 26-34(b) that the legislature was concerned with the situation presented in this case, i.e., whether a member who has been rejected by the senate may serve as a holdover.
It also appears that members of the senate recognized that in adopting HRS § 26-34(b) they were giving the governor some latitude in the nomination and confirmation process for board and commission members. During the floor debate on the bill, Senator Aber-crombie stated: “if I understand it correctly, the Governor, even under this bill, will have an out and leverage to utilize on the Senate. Now if that’s the intent of the legislation, that’s fair enough if people are willing to vote for that and allow that to take place.” 1984 Senate Journal, at 581 (statement of Sen. Abercrombie). And Senator Cayetano stated:
The problem that I have with this bill, of course, is that it sets into law the definition of a ‘holdover’ and I can see that this governor and perhaps future governors will probably take advantage of the provision that we are now going to set into law. We will have appointments which will probably be held over for maybe as much as two years ... I would have preferred that we deal with holdovers and allow them the same terms that we allow an interim appointment, for example. This bill does erode, in my view, what my understanding was of the Senate’s right of ‘advise and consent’, but I think under the circumstances and taking into account the history of the Senate as it has dealt with the Governor’s appointments and the Governor’s reaction, I think that this is probably a compromise that’s best under the circumstances.
*209 1984 Senate Journal, at 581 (statement of Sen. Cayetano).[2]
In sum, nothing in the legislative history of HRS § 26—34(b) suggests that a holdover member may not continue to serve after failing to obtain re-confirmation by the senate. Rather, in adopting that subsection, the legislature’s attention was focused on providing clear time limits on the length of a potential holdover’s service: not more than eight years of total service, and not more than two regular legislative sessions as a holdover member. Accordingly, the legislative history supports a conclusion that a holdover member can serve past his or her term even if that person has not been re-confirmed by the senate, so long as that person is not disqualified by having served two terms on the same board or commission, or eight consecutive years on that board or commission.[3]
Thus, Kanuha was not disqualified pursuant to HRS § 26-34(a) because he was not “appointed consecutively to more than two terms[,]” and his membership on the LUC did not exceed eight consecutive years. And, because he was not disqualified pursuant to HRS § 26-34(a), Kanuha could “continue in office as a holdover member until a successor [was] nominated and appointed,” provided that he did not “hold office beyond the end of the second regular legislative session following the expiration of the member’s term of office.” HRS § 26-34(b).
At the time that Kanuha voted on the Reclassification Petition, the governor had not appointed and the senate had not consented to a successor. Moreover, both of the votes at issue here occurred prior to the end of the second legislative session following the expiration of Kanuha’s original term of office. Specifically, Kanuha’s initial term expired on June 30, 2009, 2005 Senate Journal, at 770, and the end of the second regular legislative session following the expiration of Kanuha’s first term as a member of the LUC was May 5, 2011, the day that the legislature adjourned sine die. 2011 House Journal, at 918. Kanuha voted on the Reclassification Petition on September 23, 2010 and he voted to approve the Decision and Order on October 15, 2010. Accordingly, Kanuha was a valid holdover member and his votes on the Reclassification Petition and to approve the Decision and Order were valid. I would therefore affirm the judgment of the ICA.

. I concur with the majority that the circuit court properly exercised subject matter jurisdiction over Sierra Club's appeal. Majority Op. at 190 n. 13, 320 P.3d at 855 n. 13.

. The majority’s concern that the "ICA’s interpretation of HRS § 26-34 essentially provides the executive with a means to bypass the will of the Senate” (see Majority Op. at 196, 320 P.3d at 861) was therefore recognized by the Senate and accepted as a "compromise that’s best under the circumstances.” 1984 Senate Journal, at 581 (statement of Sen. Cayetano).

. The majority’s reliance on the Hawai'i Constitution’s interim appointment provision is misplaced. See Majority Op. at 195-96, 320 P.3d at 860-61. That provision limits the term of an interim appointment, who is not confirmed by the senate, to one legislative session. Haw. Const, art. V, § 6. The Constitution further provides that an interim appointment who has failed to be confirmed by the senate is ineligible for a subsequent interim appointment by the governor to the same office. Id. Holdovers, however, are meaningfully different than interim appointments because they have been previously confirmed by the senate. It is therefore entirely reasonable for the legislature to treat holdovers differently than interim appointees—who have never gained senate confirmation.